# IN THE FEDERAL DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ALABAMA – EASTERN DIVISION

| | |
|---|---|
| CHRISTINE WALDRUP CALLOWAY, § <br> KENNETH EDWARD WALDRUP, JR., § <br> and TANISHA WALDRUP PIKE, § <br> § <br> Plaintiffs, § <br> § <br> v. § <br> § <br> TERRY JOE BAGWELL and § <br> METLIFE SECURITIES, INC., § <br> § <br> Defendants. § | Case No. _____ <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs Christine Waldrup Calloway ("Christine"), Kenneth Edward Waldrup, Jr. ("Kenneth"), and Tanisha Waldrup Pike ("Tanisha," collectively "Plaintiffs"), by and through the undersigned counsel, hereby bring this Complaint for damages against Defendants Terry Joe Bagwell ("Bagwell") and MetLife Securities Inc. ("MetLife," collectively "Defendants").

### I.    INTRODUCTION

This action relates to a Ponzi scheme orchestrated by Defendant MetLife's former registered representative Bryan W. Anderson ("Anderson"), while he was registered with Defendant, bilking unsuspecting victims out of millions of dollars, which constituted their lives' savings. For conduct related to the scheme, Anderson

is currently incarcerated, having pleaded guilty to one count each of wire fraud, money laundering, and securities fraud.[1] *See* Exhibits A and B.

Anderson's fraudulent conduct would not have occurred but for MetLife's failure to supervise, institute, and enforce adequate internal controls and supervisory procedures over its registered representatives. Further, the scheme was made possible by the fact that Anderson held himself out as a representative of MetLife, used its name on business cards, put its name outside of his office, and held himself out as a representative of a FINRA member firm and SIPC insured firm.  The losses would not have occurred without the aiding and abetting of MetLife.

Plaintiffs and their mother, Fran Waldrup ("Fran"), had the utmost confidence and respect for Anderson because of his employment with MetLife. They believed that the relationship Anderson had with MetLife legitimized how Anderson handled their money. Plaintiffs could not have known that Anderson was misappropriating their funds in a massive Ponzi scheme. But for Anderson's association with MetLife, Plaintiffs and Fran would not have heeded Anderson's financial advice.

As Anderson's supervisor at MetLife, Defendant Terry Bagwell knew of and participated in Anderson's Ponzi scheme. Bagwell paid $35,000.00 into the Ponzi scheme and received a total of $47,600.00. As part of Bagwell's duties, he was

---

[1]  Due to Anderson's seven-year sentence he is currently serving, Plaintiffs have not named Anderson as a Defendant in this Complaint.

responsible for monitoring the activities of representatives under his authority and reporting those activities to the firm. Despite his investments with Anderson, which constituted red flags, Bagwell took no steps to supervise Anderson.

The allegations contained in this Complaint unfortunately are not unique to these Plaintiffs. Plaintiffs' counsel has represented twenty-five (25) other Claimants who have suffered losses due to similar wrongful conduct by Anderson and Defendants. Anderson bilked countless clients out of millions of dollars over a span of several years. A review of Anderson's FINRA BrokerCheck report shows multiple complaints and violations by Anderson during his time with MetLife. *See* Exhibit C. Despite the numerous red flags, complaints, and disputes, MetLife continued to employ Anderson. The failure of MetLife to supervise its registered representatives caused the losses suffered by Plaintiffs.

## II.   PARTIES

1. Plaintiff Christine Waldrup Calloway is an adult resident of Oxford, Alabama over the age of nineteen (19).

2. Plaintiff Kenneth Edward Waldrup, Jr. is an adult resident of Villa Rica, Georgia over the age of nineteen (19).

3. Plaintiff Tanisha Waldrup Pike is an adult resident of Eastaboga, Alabama over the age of nineteen (19).

4. Defendant Terry Joe Bagwell is an adult resident of Shelby County, Alabama. He was born in November of 1960. Bagwell was a registered representative and agent of MetLife from April 2002 to October 2011. During his employment at MetLife, Bagwell served as the Branch Office Supervisor and was responsible for supervising Anderson. FINRA permanently barred Bagwell from associating with any FINRA member in any principal capacity on February 26, 2015. *See* Exhibit D. Additionally, the Alabama Securities Commission issued a Show Cause Order against Bagwell on November 5, 2015. *See* Exhibit E.

5. Defendant MetLife Securities Inc., a subsidiary of MetLife Inc., is a broker-dealer licensed in all 50 states, the District of Columbia and Puerto Rico and offers an array of products and services including mutual funds, brokerage accounts, advisory programs, 529 College Savings Plans, nontraditional investment products, and tax-deferred variable insurance products. The Alabama Securities Commission issued a Show Cause Order against MetLife on November 5, 2015. *See* Exhibit E. MetLife did business in Alabama through its registered representatives Anderson and Bagwell.

### III.   JURISDICTION AND VENUE

6. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as there is diversity of citizenship among the parties and the matter at issue involves more than $75,000.00 exclusive of interest, cost and attorney's fees.

7. Venue is proper in this District as the acts giving rise to Plaintiff's claims happened in this forum.

## IV. STATEMENT OF FACTS

8. Fran Waldrup ("Fran") is the mother of Plaintiffs Kenneth Edward Waldrup, Jr., Christine Waldrup Calloway, and Tanisha Waldrup Pike.

9. Plaintiff Christine Waldrup Calloway ("Christine") was born on December 24, 1973. She graduated from Oxford High School in Oxford, Alabama and completed college coursework at Jacksonville State University. Between 1993 and 2004, Christine worked at Winn Dixie as a florist, Wal-Mart as a stock clerk, and Kirkland's as a stock clerk and then a backroom supervisor.

10. Plaintiff Kenneth Edward Waldrup, Jr. ("Kenneth") was born on June 16, 1972. He graduated from Oxford High School in Oxford, Alabama and completed college coursework and Ayers Technical College, West Georgia Technical College, and Jacksonville State University. He has worked for Food Ingredients Technology Company for twenty-one (21) years as a laboratory technician.

11. Plaintiff Tanisha Waldrup Pike ("Tanisha") was born on January 6, 1978. Tanisha completed the eleventh (11th) grade and was enrolled in the Pharmacy Technician continuing education program at Jacksonville State University for three

5

(3) months in 2004. Tanisha currently works as a Pharmacy Technician for CVS Health and has maintained that position since 2004.

12.   In or around February or March of 2002, Bryan Anderson of MetLife called Fran to introduce himself. During this conversation, Anderson told Fran that her husband's (and the Plaintiffs' father's) life insurance policy was divided equally between Fran, Kenneth, Christine, and Tanisha with each of them receiving twenty-five percent (25%) of the policy's value. Anderson further told Fran that her husband had likely made a mistake and that the funds were likely supposed to have been left to her alone. Hysterical, Fran relayed what Anderson had told her to Christine, stating that she would not be able to maintain her current lifestyle, she would not be able to pay her medical bills, and she would have to go back to work.

13.   In or around March 2002, Anderson met with Fran, Kenneth, Christine, and Tanisha to discuss the situation. Anderson repeated that he believed Plaintiffs' father meant to leave the value of his life insurance policy to Fran and had simply made a mistake filling out the beneficiary form. He claimed that the government would tax Plaintiffs' share of the funds by about forty percent (40%) if they were to keep the money. Anderson told them if they were to sign over their portions to Fran the tax rate would be less and Fran would be able to maintain her current lifestyle.

14.   Anderson proposed that, upon the funds being deposited into their individual MetLife accounts and Plaintiffs receiving their checks, Plaintiffs give

their portions of the policy to Fran so that she could put the money in her MetLife account and Anderson could manage the money and send her monthly checks. Plaintiffs, having been convinced by Anderson that their father had mistakenly named them beneficiaries of the policy, agreed and arranged to reconvene to write checks to Fran. On or around April 18, 2002, the funds from their father's life insurance policy were deposited into Plaintiffs' accounts.

15. On or around May 9, 2002, Plaintiffs and Fran met with Anderson, and Plaintiffs each wrote checks for their portions of the policy to Fran. Tanisha had spent $300 of her money to make a car payment. Anderson told her to simply subtract that amount from the total to give to Fran. Anderson instructed Plaintiffs to write "Gift" on the memorandum line of the checks. The total amount of these checks Plaintiffs wrote to Fran was over $186,246. But for Anderson's representations, Plaintiffs would never have given their mother their inherited funds.

16. At this meeting, Tanisha suggested that Fran use the money Plaintiffs were giving her to pay off Fran's house. Anderson said that the interest saved by paying off the house sooner would not truly help Fran as much as being able to access the money and having it grow by investing it.

17. Plaintiffs and Fran met with Anderson again in or around February or March of 2004. Before this meeting, Fran told Plaintiffs that Anderson had put her in a real estate investment that was foolproof and that she would receive a one

7

hundred percent (100%) return on her investment. Anderson had told Fran that he was allowing only a few of his clients to participate in the investment and that it was "hush hush."

18. On March 7, 2016, Plaintiff Christine Calloway read an article online that Anderson was imprisoned for operating a massive Ponzi scheme. It was not until this moment that she realized she and her siblings had been duped by Anderson into writing the checks to their mother.

19. Anderson had represented to Plaintiffs and their mother that he would protect Fran financially. Plaintiffs and Fran trusted him to do this. Anderson clearly had no actual intention handling Plaintiffs' and Fran's money appropriately and knew this when he represented to them that he would. Rather than safeguard the money Plaintiffs and Fran entrusted with him, he lost all of it within seven to eight years. As a result of Anderson's fraudulent misrepresentations and omissions, Plaintiffs suffered significant financial injury. Further, due to MetLife's inaction, negligence, failure to supervise, and breach of fiduciary duty Plaintiffs and Fran lost the entire amount of Plaintiffs' father's life insurance policy.

## V.   CAUSES OF ACTION

### A. Failure to Supervise and Investigate

20. Plaintiffs repeat and re-allege all prior paragraphs as if set forth fully herein.

21. MetLife had a duty to supervise their associated agents and registered representatives.

22. MetLife failed to supervise their associated agents and registered representatives and to ensure that Plaintiffs' monies were properly handled and that unlawful practices did not occur.

23. At the time of the events that provide the basis for Plaintiffs' allegations, the individual Defendant, Bagwell, was associated with MetLife.

24. Plaintiffs were damaged as the proximate result of the Defendants' conduct.

25. Anderson, as an agent of MetLife, made fraudulent misrepresentations and omissions which served to conceal the Defendants' wrongdoing until March 7, 2016 when Plaintiff Christine Calloway read an article regarding Anderson's Ponzi Scheme.

26. Therefore, pursuant to Ala. Code 1975 § 6-2-3, any statute of limitation which otherwise would have created a bar to this count or any other count of Plaintiffs' Complaint is not applicable, as the Plaintiffs have two years from their discovery of the facts constituting the fraud within which to prosecute this action.

**B. Breach of Fiduciary Duty and Respondeat Superior/Vicarious Liability**

27. Plaintiffs repeat and re-allege all prior paragraphs as if set forth fully herein.

28. A professional and fiduciary relationship exists whenever confidence on one side results in superiority and influence on the other side, or when one side places special confidence in the other and such confidence is accepted, causing dependence by the one individual and influence by the other. *Bank of Red Bay v. King,* 482 So.2d 274, 284 (Ala.1985).

29. Alabama courts have long recognized that a fiduciary duty exists where a person is in a position to "inspire confidence that he will act in good faith for the other's interests, or when one person has gained the confidence of another and purports to act or advise with the other's interest in mind; where trust and confidence are reposed by one person in another who, as a result, gains an influence or superiority over the other; and it appears when the circumstances make it certain the parties do not deal on equal terms." *Power Equipment Co., Inc. v. First Alabama Bank*, 585 So.2d 1291, 1297-1298 (Ala. 1991). *See also Bank of Red Bay v. King,* 482 So.2d 274, 284 (Ala.1985).

30. It is well-settled that the fiduciary responsibilities of a broker include:

- The duty to recommend a stock only after studying it sufficiently to become informed as to its nature, price and financial prognosis;

- The duty to carry out the customer's orders promptly and in a manner best suited to serve the customer's interests;

- The duty to inform the customer of the risks involved in purchasing or selling a particular security;

- The duty to refrain from self-dealing;

- The duty not to misrepresent any material fact to the transaction; and

- The duty to transact business only after receiving authorization from the customer.

*Gochnauer v. A.G. Edwards & Sons, Inc. supra.* 810 F. 2d at 1049, quoting *Lieb v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 461 F. Supp. 951, 953 (E.D. Mich. 1978)

31. Plaintiffs reasonably relied on MetLife's representations made via its agent Anderson. This reliance included MetLife's representation that it would provide the Plaintiffs with experienced and competent investment professionals who would carefully invest their savings in a manner consistent with their goals and financial circumstances. Plaintiffs reasonably relied on the Defendants when they entrusted the Defendants with their money. Defendants willingly assumed the role of fiduciary by taking control over Plaintiffs' money, and as such, Defendants are liable for breach of fiduciary duties and responsibilities, and the resulting damages.

32. Defendants had a duty to preserve and protect Plaintiffs' and Fran's money. Defendants knew and clearly understood that they had this duty. Defendants' breach of their duty to act in the Plaintiffs' best interest resulted in substantial losses for which the Defendants are wholly liable.

33. Plaintiffs placed their trust and confidence in Defendants and their registered representative to prudently manage their money.

34. MetLife was obligated by law and by securities industry standards to deal competently, fairly, and lawfully with the Plaintiffs

35. Defendants were obligated to act as fiduciaries to the Plaintiffs. In breach of these fiduciary duties, the Defendants failed to exercise reasonable care in handling the Plaintiffs' money.

36. As a proximate result, the Plaintiffs have been injured and sustained substantial losses. MetLife is liable for the actions of its associated agents and registered representatives under common law agency and respondeat superior/vicarious liability law. *Cockrell v. Pruitt*, 214 So. 3d 324, 2016 Ala. LEXIS 82 (Ala. 2016).

### D. Breach of Contract

37. Plaintiffs repeat and re-allege all prior paragraphs as if set forth fully herein.

38. In Alabama, to succeed on a breach of contract claim, "the claimant must prove: (1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *S. Med. Health Sys. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995).

39. Additionally, "a party claiming to be a third-party beneficiary of a contract must establish that the contracting parties intended, upon execution of the contract, to bestow a direct, as opposed to an incidental, benefit upon the third party." *Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co.*, 619 So. 2d 1328, 1329 (Ala. 1993).

40. In the case at hand, Defendant MetLife had a valid life insurance policy contract with Plaintiffs' father. Plaintiffs were lawful third-party beneficiaries under the contract whereby they would receive the direct benefit of proceeds from the policy upon their father's death. When their father died, Anderson, acting as an agent of MetLife, interfered with this contract, inducing the Plaintiffs to surrender funds that were rightfully theirs. Anderson's action thereby caused MetLife to breach its contract with the Plaintiffs' father.

41. As a direct and proximate result of the Defendants' breach of contract, the Plaintiffs, as third-party beneficiaries of this contract, were injured.

### E. Violations of Alabama Securities Act

42. Plaintiffs repeat and re-allege all prior paragraphs as if set forth fully herein.

43. Alabama Code § 8-6-17 provides that it is unlawful for any person, in connection with the offer, sale, or purchase of any security, to directly or indirectly: (1) employ any scheme device or artifice to defraud; (2) make any untrue statement

13

of a material fact or to omit to state a material fact necessary in order to make the statements made, under the circumstances when made, not misleading; or (3) engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. It is also a violation of Ala. Admin Code R.830-x-3.21(1)(a) to sell securities to any person that are unsuitable, given that person's objectives and financial situation.

44. Alabama Code § 8-6-19(c) provides that every person who directly or indirectly controls a person liable under subsections (a) or (b) of this section, including every partner, officer, or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the conduct giving rise to the liability, and every dealer or agent who materially aids in such conduct is also liable jointly and severally with and to the same extent as the person liable under subsection (a) or (b), unless he is able to sustain the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.

45. Under the Alabama Securities Act, the person buying the security is entitled to recover the consideration paid for the security, with interest at six percent per year from the date of payment. Ala. Code Section 8-6-19(a)(2) (2003). The statute also entitles the Plaintiffs to recover reasonable attorney's fees and costs. *Id*.

46. Upon information and belief, the securities sold were misrepresented and unsuitable. Defendants violated the Alabama Securities Act, resulting in damages to the Plaintiffs. Therefore, Plaintiffs request all damages to which they are entitled under the statute.

### F. Common Law Claims

47. Plaintiffs repeat and re-allege all prior paragraphs as if set forth fully herein.

48. Defendants are liable for the intentional and negligent misrepresentations of material fact upon which Defendants intended for Plaintiffs to rely upon and which the Plaintiffs did rely, thereby causing their damages.

49. Through their wrongful self-dealing actions, Defendants were unjustly enriched from Plaintiffs.

50. As described above, Defendants breached their duty to Plaintiffs of good faith and fair dealing and were negligent at all points in their relationships with the Plaintiffs.

51. As described above, Defendants intentionally, fraudulently, and/or through gross negligence and with reckless disregard, harmed Plaintiffs.

52. Defendants failed to execute properly their duties to the account and thus proximately caused substantial losses to the Plaintiffs. Defendants should be

held liable to the Plaintiffs for damages, including loss of assets, lost opportunities, consequential losses, and injury to their property.

### G.   Fraud

53.   Plaintiffs repeat and re-allege all prior paragraphs as if set fully forth herein.

54.   At the time that Plaintiffs turned their monies over on the advice of Anderson and times since then, Anderson represented to the Plaintiffs that he would prudently handle the monies.  At the time Anderson made these representations and omissions, he knew or should have known them to be false.

55.   Instead, Anderson, acting as an agent of MetLife and under the supervision of Bagwell, stole the Plaintiffs' money via a Ponzi Scheme.

56.   Plaintiffs reasonably relied on Anderson's representations to their detriment and have sustained substantial damages as the proximate result of his actions.

57.   Plaintiffs could not have and did not discover Anderson's wrongdoing until Plaintiff Christine Calloway read an article in March 2016 about Anderson's imprisonment.

58.    Anderson fraudulently convinced Plaintiffs that their father did not intend to bequeath them any money upon his death and has maintained this

fraudulent misrepresentation by failing to provide truthful and accurate information to Plaintiffs regarding their father's wishes.

59. Andersons's misrepresentations regarding the Plaintiffs' father were material in that they induced the Plaintiffs to write checks representing their portions of their father's life insurance benefits.

60. Plaintiffs are informed and believe that Anderson acted willfully, wantonly and maliciously so as to entitle them to punitive damages.

61. Anderson's statements made while a representative of MetLife and under the supervision of Bagwell were misrepresentation of a material fact, made willfully to deceive the Plaintiffs, and were acted on by the Plaintiffs to their detriment.

62. MetLife is liable for the fraudulent misrepresentations and omissions of their associated agents and registered representatives under theories of common law agency and respondeat superior/vicarious liability.

## VI.   RESERVATION OF RIGHT TO AMEND

63. Plaintiffs hereby reserve the right to amend this Complaint as information is acquired from Defendants and others.

## VII.   PRAYER FOR RELIEF

64. By reason of the foregoing, Plaintiffs are entitled to be compensated for damages sustained as a direct, proximate, and consequential result of the acts, errors,

and omissions of the Defendants. Plaintiffs ask that the Court order the Defendants to pay damages at an amount to be proven at trial, including, but not limited to:

A. All losses at issue;

B. The lost earnings that the Plaintiffs would have earned if Plaintiffs' money had not been stolen via a Ponzi Scheme;

C. Rescission;

D. Pre-judgment interest at the maximum statutory interest rate on all losses sustained from the date of the transactions until the date of the award by the Arbitrators pursuant to Alabama law;

E. The full monetary benefit of any bargain that was entered into by the Plaintiffs and Anderson.

F. All costs of these proceedings, including forum fees, hearing session fees and costs in bringing this action;

G. Post-judgment interest at the maximum statutory interest rate;

H. Reasonable attorneys' fees under Alabama statutory law and common law as well as under the NASD Rules of Fair Practice.

I. Punitive damages to be assessed by the Court to ensure the investing public that, in the future, the Defendants and their financial consultants will conduct their affairs to the highest integrity required of financial advisors.

## VIII. JURY TRIAL DEMANDED

Plaintiffs demand trial before a struck jury.

Date: October 6, 2017

Respectfully submitted,

*/s/ Richard S. Frankowski*
Richard Frankowski

/s/ *Robert E. Norton*
Robert E. Norton

Of Counsel:
**THE FRANKOWSKI FIRM, LLC**
2126 15th Avenue South
Birmingham, Alabama 35205
Phone: 205-390-0399
Fax:  205-390-1001
richard@frankowskifirm.com
rob@frankowskifirm.com
*Attorneys for the Plaintiffs*