FILED
2018 Oct-10 AM 11:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE WALDRUP CALLOWAY, KENNETH EDWARD WALDRUP, JR., and TANISHA WALDRUP PIKE, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) Case No.1:17-cv-01717-JEO |
| METLIFE SECURITIES, INC., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiffs allege Defendant MetLife Securities, Inc. ("MSI") is responsible for a fraud perpetrated by its agent Bryan Anderson. The action is before the court on Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). (Doc. 30). The court concludes that Defendant's motion is due to be granted.

### I. FACTS AND PROCEDURAL HISTORY

This action arises from Plaintiffs' sixteen-year-old interactions with Anderson, a former employee of Defendant. In early 2002, after her husband's death, Plaintiffs' mother, Fran Waldrup, was contacted by Bryan Anderson who informed Fran that her husband's life insurance policy required the equal division of the proceeds between Fran and Plaintiffs. (Doc. 29 ("Compl.") at 5). Anderson

1

told her that Plaintiffs' father "had likely made a mistake and that the funds were likely supposed to have been left to her alone." (*Id.*) Faced with the possibility of a jarring change in lifestyle, Fran called Plaintiffs to relay to them what she had been told by Anderson. (*Id.* at 5-6). Shortly thereafter, in about March 2002, Plaintiffs met with Anderson and Fran to discuss the situation. (*Id.* at 6). Anderson repeated his belief that Plaintiffs' father had meant to leave the insurance proceeds to Fran alone and that he "had simply made a mistake filling out the beneficiary form." (*Id.*) He went further, suggesting that the tax rate would be higher if Plaintiffs kept their portion of the proceeds. (*Id.*) He proposed that Plaintiffs give their portions of the policy to Fran so that the tax rate would be less and she could place the money in her MSI account which would allow Anderson to manage the money. (*Id.*) Plaintiffs agreed to Anderson's plan. (*Id.*)

A short time later, on April 18, 2002, the funds from the life insurance policy were deposited in Plaintiffs' accounts. (*Id.*) On May 8, 2002, Plaintiffs and Fran met with Anderson to make the transfers of funds from Plaintiffs' accounts to Fran. (*Id.* at 6-7). They did so by writing personal checks for the portion they had received from the policy. Anderson told Plaintiffs to write "Gift" on the memorandum line of each check. (*Id.* at 7). A total of $186,246.00 was transferred to Fran's accounts. (*Id.*) During the meeting, Plaintiff Tanisha Waldrup Pike suggested to her mother that the money could be used to pay off the

mortgage on Fran's home. Anderson discouraged that, saying that "paying off the house sooner would not truly help Fran as much as being able to access the money and having it grow by investing it." (*Id.*)

Plaintiffs met with Anderson and Fran again in about February or March 2004. (*Id.* at 7). Before the meeting, Fran told Plaintiffs that Anderson had put her money in a "fool proof" real estate investment and that she was guaranteed a 100% return on the investment. (*Id.*) According to Anderson, the investment was "hush-hush" and was made available on an exclusive basis. (*Id.*)

Anderson proceeded to use the money as part of a massive Ponzi scheme for which he was arrested, charged, and convicted in 2015. (*Id.* at 8). Fran lost all of the money by 2010.[1] (*Id.* at 9).

In 2016, fourteen years after the first meeting with Anderson, Plaintiff Calloway read an article online about the Ponzi scheme and realized that Fran had been swindled. (*Id.* at 8). Further, she believed that Plaintiffs had been duped by Anderson into giving away the proceeds of their father's life insurance policy. (*Id.*) In response to this belief, Plaintiffs filed this action against MSI as Anderson's former employer. (Doc. 1). Plaintiffs filed an amended complaint on August 7, 2018. (Doc. 29). On August 21, 2018, Defendant moved to dismiss the

---

[1] Plaintiffs' Second Amended Complaint alleges that rather than safeguarding the money, Anderson "lost all of it within seven to eight years." (*Id*. at 9).

3

amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 30).

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2) & 12(b)(6). "[T]he pleading standard described by Rule 8 does not required detailed factual allegations, but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). It is insufficient to simply recite the elements of a cause of action or make conclusory allegations. *See id.* Mere naked assertions devoid of factual support do not satisfy the requirements of Rule 8. *See id.*

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* A complaint meets this standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, the complaint must establish more than the *mere possibility* that a defendant has acted unlawfully. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In the end, this inquiry is a "context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

Plaintiffs' complaint contains multiple counts. Plaintiffs have alleged the following claims: (1) failure to supervise and investigate, (2) breach of fiduciary duty, (3) breach of contract, (4) "common law claims" of intentional and negligent misrepresentation, unjust enrichment and breach of the duty of good faith and fair dealing, and (5) fraud. (Doc 29. at 9-17). Defendant contends that various grounds exist for dismissing each claim. Some contentions apply to every claim and others apply to only certain claims. They will be addressed below.

### A. Standing

Defendant first contends that Plaintiffs lack standing to assert tort claims for acts committed against Fran. (Doc. 30 at 7). Plaintiffs respond that they have standing to assert claims arising out of the "multiple statements made directly to them by Anderson . . . which induced the Plaintiffs to surrender their inheritance" and that they are not attempting to assert any claim on behalf of their mother. (Doc. 34 at 6-7).

It is Plaintiffs' responsibility to demonstrate standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that the plaintiff must demonstrate an "injury in fact"); *see also Nunnlee v. United States*, 972 F. Supp. 2d 1279, 1287 (N.D. Ala. 2013). They contend they have met this burden premised on their allegations that Andersons' knowingly made false statements

concerning the intent of Plaintiffs' father with regard to the insurance proceeds, the tax consequences of the transfers, the advantages of having him manage the money, and their mother's ability to continue her lifestyle. (Doc. 34 at 7). Accordingly, any claims by Plaintiffs in this action are limited to those premised on the loss caused by the transfer of their shares of the policy proceeds to their mother in 2002 and not the losses their mother sustained when Anderson took all of the money thereafter.

> B. **Statute of Limitations**

Defendant next contends that it is entitled to dismissal of Plaintiffs' claims because they are barred by the applicable statute of limitations. (Doc. 30 at 16). Under Ala. Code § 6-2-38(l), the failure to supervise and investigate, breach of fiduciary duty, intentional and negligent misrepresentation, unjust enrichment and breach of the duty of good faith and fair dealing, and fraud claims, which all arise from the alleged fraud, are subject to a two-year statute of limitations. *See RaCON, Inc., v. Tuscaloosa* County, 953 So. 2d 321, 326 (Ala. 2006) (noting that "[a] two-year statute of limitations applies to fraud actions); *Tender Care Veterinary Hosp. v. First Tuskegee Bank*, 168 So. 3d 33 (Ala. 2014) (breach of fiduciary duty claims are subject to a two-year statute of limitations). Plaintiffs' contract claim is governed by the six year statute of limitations. Ala. Code § 6-2-34(9).

The statute of limitations for fraud begins to run as a matter of law when a party actually discovers the fraud or when he or she "becomes privy to facts that would provoke inquiry in a reasonable person that, if followed up, would lead to the discovery of the fraud." *Dickinson v. Land Developers Constr. Co.*, 882 So. 2d 291, 298 (Ala. 2003); *See* Ala. Code § 6-2-3. Generally, the question of when a party discovered or reasonably should have discovered a fraud is reserved for the jury. *Bryant Bank v. Talmage Kirkland & Co., Inc.*, 155 So. 3d 231, 236 (Ala. 2014); *Potter v. First Real Estate Co.*, 844 So. 2d 540, 546 (Ala. 2002). However, "[t]he question of when a plaintiff should have discovered fraud should be taken away from the jury and decided as a matter of law only in cases where the plaintiff *actually knew* of facts that would have put a reasonable person on notice of fraud." *Bryant Bank*, 155 So. 3d at 237 (quoting *Liberty Nat'l Life Ins. Co. v. McAllister*, 675 So. 2d 1292, 1297 (Ala. 1995)); *McGowan v. Chrysler Corp.*, 631 So. 2d 842, 845 (Ala. 1993). Plaintiffs have the burden of establishing that they are entitled to tolling. *First Alabama Bank of Montgomery, N.A. v. First State Ins. Co., Inc.*, 899 F.2d 1045, 1054 (11th Cir. 1990).

Defendant asserts that Plaintiffs were placed on notice for purposes of the statute of limitations in 2002 when Anderson stated what he believed their father intended or when Anderson represented to Fran in 2004 that the money was invested in a "foolproof" real estate investment that would result in a "one hundred

7

percent (100%) return." (Doc. 30 at 17-18). Plaintiffs content that they could not have and did not discover Anderson's wrongdoing until Plaintiff Calloway read an article in March 2016 about Anderson's imprisonment. (Doc. 34 at 14). They also argue that they have adequately pled facts supporting their tolling argument. (*Id.*)

The Second Amended Complaint alleges that Plaintiff "could not with reasonable diligence discover Anderson's Ponzi scheme, reasonably relied on Anderson's representations, and could not have and did not discover Anderson's wrong doing until March 2016." (Doc. 29 at ¶¶ 59-61). These allegations are insufficient as a matter of law to toll the running of the statute of limitations as to these claims. The allegations are conclusory and ignore the fact that in 2002 Plaintiffs were aware that Anderson's statements concerning their father's intent were in direct conflict with the insurance policy that named Plaintiffs and their mother Fran as equal beneficiaries. This information should have provoked inquiry by Plaintiffs concerning the issue. *See Levett v. Independent Life and Acc. Ins. Co.*, 814 F. Supp. 1053, 1057 (M.D. Ala. 1993) (holding that statute of limitations were not tolled where Plaintiff should have read the policy that conflicted with agent's alleged omission and therefore plaintiff was on notice of her claims); *Lewis v. East Alabama Funeral Ins. Co.*, 472 So. 2d 1090, 1091-92 (Ala. Civ. App. 1985) (finding claims time barred where the plaintiffs could have simply read the policy and "discovered that the benefits in dispute were not

incorporated in the contract"[2]). Yet there is no allegation in the complaint or other pleadings that Plaintiffs conducted any inquiry regarding their father's intent. There is no allegation that they further discussed the facts and circumstances with Fran or Anderson. For instance, there is no allegation that they inquired as to the basis for Anderson's representations or whether he had any documentation or notes supporting his belief. Additionally, there is no indication they asked Fran whether she and their father ever discussed the matter. Further, there is no indication that their father ever initiated any efforts to change the beneficiaries under the policy.[3] Thus, the court finds that the fraud related claims are barred by the applicable statute of limitations.[4] For the same reasons, the court also finds that Plaintiffs' contract claims are barred by the statute of limitations.[5]

---

[2] The *Lewis* court also noted that the plaintiffs did not state "why they could not have discovered the alleged fraud through the exercise of due diligence[,] [n]or [did] they aver[ ] any facts [ ] show[ing] that East Alabama fraudulently prevented discovery of facts constituting the alleged fraud." *Id*. at 1092.

[3] It also appears from the complaint that Plaintiffs were placed on notice of the need for additional inquiry in March 2004 when Fran told them that Anderson represented to her that the "hush-hush" investment was "foolproof" and that she would receive a "one hundred present (100%) return on her investment." (*See* Doc. 29 at ¶ 17).

[4] This includes the claims for failure to supervise and investigate, breach of a fiduciary duty, misrepresentation, unjust enrichment, breach of the duty of good faith and fair dealing, and fraud.

[5] In view of the court's holding regarding the statute of limitations, it pretermits any discussion of Defendant's assertion that Plaintiffs were on notice of their claims by 2010 when all the money was lost. (*See* Doc. 30 at 20).

## C. Breach of Fiduciary Duty

While the court concludes all of Plaintiffs' claims are untimely, the court also agrees that they fail for additional reasons. Plaintiffs allege that MSI violated its fiduciary duty owed to them premised on Anderson's mishandling of the money given to Fran by Plaintiffs. (Doc. 29 at 10-13). MSI asserts that this claim is due to be dismissed because MSI did not have a fiduciary relationship with Plaintiffs after the money was transferred. (Doc. 30 at 9). Defendant also asserts this claim has been abandoned by Plaintiffs. (Doc. 35 at 9). The court agrees on both counts.

First, Plaintiffs have not responded to Defendant's challenges to the breach of fiduciary claim. Therefore, this claim is deemed to be abandoned. Defendant's motion is due to be granted as to this claim. *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (""[F]ailure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *see also Howell v. Morrison Mgmt. Specialists, Inc.*, No. 4:08-cv-02232-JEO, 2010 WL 11561470, at *7 (N.D. Ala. July 23, 2010) (finding Plaintiff abandoned her claim when she did not respond to Defendant's arguments on summary judgment).

Second, under Alabama law, a defendant is not liable for breach of fiduciary duty when it has no fiduciary relationship with the plaintiff. *See Maloof v. John Hancock Life Ins. Co.*, 60 So. 3d 263, 273 (Ala. 2010). It might be assumed

Plaintiffs have alleged the existence of a fiduciary relationship between MSI and their mother. However, they have not alleged facts supporting that such a relationship existed between MSI and Plaintiffs themselves. Plaintiffs do not claim that they entrusted their money to Anderson. Nor do they claim that they hired MSI or Anderson to manage their funds or act as a financial advisor. Rather, the facts alleged in the complaint are that Anderson mishandled Fran's money through his Ponzi scheme, not Plaintiffs' money. (Doc. 29 at 12-13). Plaintiffs' transfer of the money to Fran at Anderson's suggestion did not create a fiduciary relationship between them and MSI because the granted money ceased being their money at the time of the transfer. Thus, the Second Amended Complaint does not state a plausible cause of action for a breach of fiduciary duty.

### D. Fraud and Misrepresentation

Defendant next contends that it is entitled to a dismissal of Plaintiffs' tort claims for fraud and misrepresentation because Anderson's statements of opinion are not actionable fraud. (Doc. 30 at 10). Plaintiffs respond that Anderson's statements were more than mere opinions and even if they were opinions, they are still actionable. (Doc. 34 at 8-12).

To support a claim for fraud, Plaintiffs must allege facts establishing (1) that Defendant made a false representation, (2) the misrepresentation involved a material fact, (3) Plaintiffs relied on the misrepresentations, and (4) the

misrepresentation damaged Plaintiffs. *See AmerUs Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1207 (Ala. 2008).

Plaintiffs are unable to show that there was a false representation of an existing material fact. The statements made by Anderson that allegedly led to Plaintiffs' injury were statements of opinion or belief. Statements of opinion or belief are generally not considered statements of material fact. *See e.g.*, *McCutcen Co., Inc. v. Media General, Inc.*, 988 So. 2d 998, 1002 (Ala. 2008). According to the complaint, Plaintiffs allege that Anderson asserted his *belief* that their father wanted Fran to have the entirety of the insurance policy proceeds. (Doc. 29 at 5-7). Plaintiffs argue that an opinion will support a fraud claim if it is knowingly false and induced plaintiffs to reasonably rely on it to their detriment. (Doc. 34 at 9). However, to allege that an opinion supports a fraud claim, a plaintiff must also allege that the individual making the statement possessed facts unavailable to the plaintiffs. *See e.g., Cooper & Co., Inc. v. Lester*, 832 So. 2d 628, 634-35 (Ala. 2000) (seller's opinion that there was no problem with water was actionable when he had knowledge of previous flooding); *Reynolds v. Mitchell*, 529 So. 2d 227, 231 (Ala. 1988) ("a person may reasonably rely on the representation of an opinion …. where the facts are not equally known to both sides, a statement of opinion by the one who knows the facts better, often involves a statement of a material fact that justifies his opinion). As discussed above, no allegation was made in the

complaint that Anderson possessed facts about Plaintiffs' father's intentions regarding the allocation of his insurance policy funds that was unavailable to Plaintiffs. In addition, the other statements regarding the investment opportunity for Fran, his suggestions regarding Fran's money, and his assertions that he would take care of Fran financially cannot be considered to have caused Plaintiffs' injury as they occurred *after* Plaintiffs gave their share of the insurance money to Fran. (Doc. 29 at 7).

### E. Breach of Contract

Plaintiffs allege that Defendant breached a valid life insurance policy contract with Plaintiffs' father; thereby, injuring Plaintiffs in their status as third-party beneficiaries. (Doc. 29 at 13-14). As noted above, this claim is barred by the applicable statute of limitations. Even if the claim was not barred by the statute of limitations, it would still be subject to dismissal. According to facts alleged in the complaint, Defendant upheld its obligations under the insurance policy held by Plaintiffs' father. (Doc. 29 at 6). MSI deposited the policy proceeds in Plaintiffs' accounts in accordance with the insurance contract. (*Id*.) That is all that was required under the contract. The subsequent transfer of the money to Fran at Anderson's encouragement does not constitute a breach of the contract. Thus, on the face of the complaint, there is no plausible claim of breach of contract.

### F. Negligent Supervision

Plaintiffs allege that Defendant negligently failed to supervise Anderson's actions as their agent. (Doc. 29 at 9-10). Defendant asserts that this claim fails because the underlying claims are without merit. (Doc. 30 at 15). The court agrees.

Under Alabama law, there is no independent action for negligent supervision, hiring, training, and retention (collectively "negligent supervision"). *See Flying J. Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2008). Rather, assertions of negligent supervision are a means by which plaintiffs may seek to impose liability against an employer for an underlying injury caused by an employee. *See Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 825 (Ala. 1999). Thus, negligent supervision claims are derivative of and reliant upon the underlying claims. *See Ekokotu v. Boyle*, 294 F. App'x 523, 527 (11th Cir. 2008) (holding that negligent retention is derivative of the underlying claim). In other words, if the underlying claims fail, a plaintiff cannot sustain a claim for negligent supervision. *See id*. Because Plaintiffs' underlying claims in this case fail, they cannot maintain their claim regarding any alleged negligent supervision by Defendant.[6]

---

[6] The title to this claim in the complaint also includes a reference to a failure to investigate. (Doc. 29 at 9). There are, however, no allegations in the body of the count supporting such a claim. Accordingly, it is deemed to be abandoned.

## IV. CONCLUSION

Based on the foregoing, the court finds that Defendant's motion to dismiss the Second Amended Complaint (doc. 30) is due to be granted in its entirety. All claims against Defendant MSI are due to be dismissed with prejudice. An appropriate order will be entered.

**DONE**, this the 10th day of October, 2018.

_____
**JOHN E. OTT**
Chief United States Magistrate Judge